IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARNET MUSE, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TRANS UNION LLC, | : | NO. 07-3277 |

**M E M O R A N D U M   A N D   O R D E R**

Ditter, J.                                                                                                                                                     January 22, 2009

      This case comes before me as a result of the defendant's credit reports about the plaintiff. The plaintiff contends that the reports were inaccurate, that her efforts to have them corrected were unavailing, and that as a result, she suffered financially and emotionally. The sole issue about the reports in question arise out of charges and credits to a gas credit card that was serviced by Citibank for BP/Amoco and Citibank's statements to the defendant about the status of the plaintiff's account.

      A non-jury trial commenced on December 16, 2008. After the plaintiff's presentation of her case at trial, the defendant made an oral motion for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c). Specifically, the defendant argued that the plaintiff failed to prove any inaccuracies on her credit report or show that she was entitled to any damages. Having carefully considered all of the evidence, I make the following:

FINDINGS OF FACT

      1. Trans Union is a "consumer reporting agency" as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"). The plaintiff is a "consumer" as defined by the FCRA.

      2. At all times relevant to this action, the plaintiff had, or previously had, a BP/Amoco gas credit card that was serviced by Citibank (South Dakota) N.A. Citibank furnished

information about the gas card to Trans Union.  Citibank is a "furnisher of information to consumer reporting agencies" under Section 1681s-2 of the FCRA.

   3.  According to the plaintiff's billing statements from Citibank for the gas card account, as of the September 2001 statement, the plaintiff had an outstanding balance of $6.84 and was informed that a payment of $6.84 was due by October 16, 2001.

   4.  Citibank received no payment from the plaintiff by October 16, 2001.  As a result, the plaintiff was assessed a late fee/finance charge on her October 2001 statement and informed that a minimum payment of $16.84 was due by November 15, 2001.

   5.  On October 21, 2001, the plaintiff made a $10.00 charge on the gas card.

   6.  Citibank received a $6.84 payment from the plaintiff on October 22, 2001, the amount that was due by October 16, 2001, but an amount that was less than the minimum amount due by November 15, 2001.

   7.  As a result of other charges and credits, as of the December 2001 statement, the plaintiff had an outstanding balance of $31.32 and was informed that a minimum payment of $10.00 was due by January 15, 2002.

   8.  Citibank received no payment from the plaintiff by January 15, 2002.  As a result, the plaintiff was assessed a late fee/finance charge on her January 2002 statement, her outstanding balance was $41.32, and she was informed that a minimum payment of $20.00 was due by February 16, 2002.

   9.  Citibank received no payment from the plaintiff by February 16, 2002.  As a result, the plaintiff was assessed a late fee/finance charge on her February 2002 statement, her outstanding balance was $51.32, and she was informed that a minimum payment of $30.00 was due by March

15, 2002.

10. Citibank received no payment from the plaintiff by March 15, 2002. The plaintiff was assessed a late fee/finance charge but also received a late fee/finance charge adjustment on her March 2002 statement. As a result, the plaintiff's outstanding balance was $51.32, and she was informed that a minimum payment of $30.00 was due by April 14, 2002.

11. By check dated March 11, 2002, the plaintiff paid Citibank $41.32, an amount less than the outstanding balance as of the February 2002 and March 2002 statements. The plaintiff's check was endorsed by Citibank on March 18, 2002.

12. Citibank received a payment of $41.32 from the plaintiff on March 18, 2002, leaving a balance due of $10.00.

13. The plaintiff's March 2002 statement from Citibank did not show the receipt of the plaintiff's check for $41.32.

14. By letter dated March 28, 2002, Citibank provided a notice to the plaintiff which in part said:

> A portion of your balance is presently past due. Since our terms require full payment of the past due amount, your account is suspended. No additional charges are authorized at this time. But if you take positive action now, by paying the payment due as shown above by the next billing cycle, you may continue making payments under the terms of your card member agreement, and we will not at this time enforce our right to collect the entire balance.

15. The plaintiff's April 2002 statement from Citibank did not show the receipt of the plaintiff's check for $41.32. This statement contained the following notice:

> A PORTION OF THE BALANCE OWING ON YOUR ACCOUNT IS PAST DUE AND CONTINUES TO BE HANDLED BY THE COLLECTION DIVISION.

YOU HAVE BEEN PREVIOUSLY ADVISED THAT THIS ACCOUNT IS CANCELLED, AND YOUR CREDIT PRIVILEGES HAVE NOT BEEN REINSTATED.

16.  The plaintiff's May 2002 and June 2002 statements from Citibank did not show the receipt of the plaintiff's check for $41.32.

17.  None of the plaintiff's billing statements from Citibank acknowledge the receipt of the plaintiff's check for $41.32.

18.  Even if Citibank had acknowledged the receipt of the plaintiff's check on March 18, 2009, or on any date thereafter, the plaintiff would still have had an outstanding balance.

19.  At all times relevant to this action, Citibank informed Trans Union that the plaintiff's gas card account had a balance of $0 and that its status was "payment after charge-off/collection."

20.  16 C.F.R. § 600, App. (2008) defines "placed for collection" and "charge-off" as follows:

> 1. Placement for Collection
>
> The term "placed for collection" means internal collection activity by the creditor, as well as placement with an outside collector, whichever occurs first. Sending of the initial past due notices does not constitute placement for collection. Placement for collection occurs when dunning notices or other collection efforts are initiated.
> …
>
> 2. Charge to Profit and Loss
> The term "charged to profit and loss" means action taken by the creditor to write off the account …

21.  On November 2, 2005, Trans Union received a notice from the plaintiff, via the internet, in which the plaintiff disputed, inter alia, the report about her Citibank gas card account including its status, payment history and payment rating.  She claimed that Citibank would

change the status of the gas card account.

22. In response to the plaintiff's November 2005 dispute notice, Trans Union sent Citibank an "Automated Consumer Dispute Verification" ("ACDV") form, which is a form used by credit reporting agencies to investigate disputes and to provide notice of the dispute to a furnisher of information. The ACDV form requested that Citibank verify the status of the plaintiff's gas card account. Citibank confirmed that the account status was "62" which shows the account was paid and was a collection account.

23. On December 1, 2005, Trans Union notified the plaintiff that its investigation resulting from her November 2005 dispute notice showed her gas card account at Citibank was marked paid and had been a collection account.

24. On December 7, 2005, the plaintiff requested and received a copy of her credit file. That same day, the plaintiff submitted a dispute notice over the internet that, inter alia, indicated that she disputed the account status, payment history, and payment rating of her Citibank gas card account.

25. On December 22, 2005, Trans Union received a form letter from the Pennsylvania Attorney General's Office on behalf of the plaintiff. This letter enclosed materials that the plaintiff had sent to the Attorney General respecting, inter alia, Citibank's reporting of the plaintiff's gas card account to Trans Union and other credit reporting agencies.

26. On December 30, 2005, Trans Union received two letters from the plaintiff (in a single envelope) respectively dated December 23, 2005, and December 7, 2005. These letters disputed various items on the plaintiff's credit report. The December 23, 2005 letter related to a PGW utility bill that is not alleged to be the basis of any FCRA violation by Trans Union. The

December 7, 2005 letter is the same as the letter attached to the December 22, 2005 form letter from the Attorney General of Pennsylvania.

27. In response to the December 7, 2005 internet dispute notice, the December 22, 2005 letter from the Attorney General, and the material received by Trans Union on December 30, 2005, Trans Union sent Citibank an ACDV form. The ACDV form requested that Citibank verify the account status of the plaintiff's gas card. Citibank confirmed that the account status was "62" which shows the account was paid and was a collection account.

28. On January 20, 2006, Trans Union notified the plaintiff of the results of its reinvestigation of the various December 2005 dispute notices. This report verified that the plaintiff's Citibank gas card account was carried as "payment after charge off/collection."

29. On January 20, 2006, Dawn Reeps, senior investigator at Trans Union's Priority Processing Department, wrote a letter to the Attorney General, with a copy to the plaintiff, that explained Trans Union's procedures for and reinvestigations of the plaintiff's disputes of the gas card account in November 2005 and December 2005. Her letter provided Ms. Reeps' mailing address, phone number and extension so that any further questions or concerns could be addressed to her.

30. The plaintiff never contacted Ms. Reeps with any further questions or concerns.

31. On April 2, 2007, the plaintiff commenced suit against Trans Union in a magisterial district court in Montgomery County. Following an appeal de novo, the plaintiff filed this action in Montgomery County Common Pleas Court. On August 7, 2007, Trans Union timely and properly removed the common pleas action to this court.

32. On April 23, 2007, Trans Union deleted the gas card item from the plaintiff's credit file, after its investigation in response to the plaintiff's suit.

33. Section 1681e(b) of the FCRA requires that a credit reporting agency such as Trans Union "shall follow reasonable procedures to assure maximum accuracy of the information" that it reports.

34. Section 1681i(a) of the FCRA requires that a credit reporting agency, if a consumer disputes the accuracy of the information in her file and notifies the agency, shall "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

35. Trans Union's first report accurately stated the information provided by Citibank concerning the status of the plaintiff's gas card account. In November 2005 and December 2005, Trans Union asked Citibank for the status of the plaintiff's account. In both instances, the report was the same: the account was paid, and was carried as "payment after charge off/collection."

36. Trans Union followed reasonable procedures to assure the accuracy of its initial report concerning the plaintiff's Citibank account.

37. Trans Union conducted a reasonable reinvestigation of the plaintiff's disputes on two subsequent occasions to assure the accuracy of its reports concerning her Citibank account.

38. The plaintiff was not denied credit or required to pay a higher rate of interest as a result of Trans Union's reports that her BP/Amoco credit card account at Citibank was shown as "payment after-charge off/collection."

39. The plaintiff did not suffer any emotional damages as a result of Trans Union's reports that her BP/Amoco credit card account at Citibank was shown as "payment after-charge off/collection."

Therefore, I reach the following:

CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and their issues pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681.

2. Rule 52(c) provides that "[i]f during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim … that cannot under the controlling law be maintained." Fed. R. Civ. P. 52(c). In entering judgment pursuant to Rule 52(c), I must not draw any special inferences in the nonmovant's favor; instead, I must weigh the evidence, resolve any conflicts in it, and decide where the preponderance lies. *Gannon v. United States*, 571 F. Supp. 2d 615, 617 (E.D. of Pa. 2007).

3. Section 1681e(b) of the FCRA requires that a credit reporting agency "shall follow reasonable procedures to assure maximum accuracy of the information" that it reports.

4. Section 1681i(a) of the FCRA requires that a credit reporting agency, if a consumer disputes the accuracy of the information in her file and notifies the agency, shall "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

5. The plaintiff failed to prove that Trans Union's reports concerning her Citibank account were inaccurate.

6. The plaintiff failed to prove that Trans Union violated its duty to follow reasonable procedures to assure the accuracy of its reports concerning her Citibank account.

7. The plaintiff failed to prove that Trans Union violated its duty to conduct a reasonable reinvestigation of the plaintiff's disputes concerning her Citibank account.

8. The plaintiff was not denied credit or required to pay a higher rate of interest as a result of Trans Union's reports that her BP/Amoco credit card account at Citibank was shown as "payment after-charge off/collection."

9. The plaintiff did not suffer any emotional damages as a result of Trans Union's reports that her BP/Amoco credit card account at Citibank was shown as "payment after-charge off/collection."

10. The plaintiff is not entitled to compensatory damages, punitive damages, attorneys' fees, or costs.

11. Judgment is properly entered in favor of the defendant and against the plaintiff on all claims set forth in the complaint.[1]

An order follows.

---

[1] The plaintiff's original complaint set forth three claims aside from the alleged FCRA violations in Count II. These other claims were plead as Count I (libel), Count III (breach of fiduciary duty), and Count IV (intentional misrepresentation). The plaintiff made no mention of or argument relating to these claims in any of the pre-trial materials or at trial. It is clear that at least Counts I and III are preempted by Section 1681h(e) of the FCRA ("No consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence ... against any consumer reporting agency ... except as to false information furnished with malice or willful intent ...."). Nevertheless, the plaintiff failed to prove any of these claims.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARNET MUSE, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TRANS UNION LLC, | : | NO. 07-3277 |

**O R D E R**

AND NOW, this 22nd day of January, 2009, IT IS HEREBY ORDERED that the defendant's motion for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c) is GRANTED.

BY THE COURT:

/s/ J. William Ditter, Jr.
J. WILLIAM DITTER, JR., S.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARNET MUSE, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TRANS UNION LLC, | : | NO. 07-3277 |

**J U D G M E N T**

AND NOW, this 22nd day of January, 2009, in accordance with the memorandum and order delivered this day, IT IS HEREBY ORDERED that JUDGMENT is entered for the defendant.  The Clerk of Court is directed to CLOSE this matter for statistical purposes.

BY THE COURT:


/s/ J. William Ditter, Jr.
J. WILLIAM DITTER, JR., S.J.